**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **CRAIG DOUGLAS ECKSTEIN,** ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> **SONOCO PRODUCTS COMPANY,** ) <br> ) <br> Defendant. ) | Case No. 7:20cv435 <br><br> By:   Michael F. Urbanski <br> Chief United States District Judge |

**MEMORANDUM OPINION**

This matter is before the court on defendant Sonoco Products Company's ("Sonoco") motion to dismiss Counts Two, Three, Four, and Five of plaintiff Craig Douglas Eckstein's complaint. ECF No. 5. Sonoco argues that that Count Two, a wrongful termination claim, is barred by the Virginia Occupational Safety and Health Act ("VOSHA"), and that Counts Two, Three, Four, and Five are barred by the Virginia Worker Compensation Act ("VWCA"). Id. at 1. Sonoco argues in the alternative that Counts Two, Three, Four, and Five are insufficiently pled under Federal Rule of Civil Procedure ("FRCP" or "Rule") 12. Eckstein opposes the motion to dismiss Counts Three, Four, and Five of the complaint, contending that the VWCA does not bar his claims and that they are sufficiently pled to survive a Rule 12 motion. ECF No. 13. However, Eckstein voluntarily dismisses Count Two, conceding that VOSHA bars the claim. Id. at 6. The matter is fully briefed, and the court heard argument on October 22, 2020.

Because Eckstein has represented that he intends to drop his wrongful termination claim, the court **DISMISSES with prejudice** Count Two. Further, for the reasons set forth

1

herein, the court **GRANTS** Sonoco's motion and **DISMISSES with prejudice** Three, Four, and Five of the complaint.

## I.

This action arises out of an employment dispute between Eckstein, a former Global Safety Manager for Display and Packaging, and his former employer, Sonoco, an international packaging producer. Compl., ECF No. 1-1 at 1–3. Eckstein was employed with Sonoco from approximately March 5, 2018, until May 2, 2019. Id. at 1. During his tenure with Sonoco, Eckstein reported to Max Dillon, Director of U.S. Fulfillment, and was a peer of Jeff Tedder, Director of Manufacturing for the company's facilities in Winston-Salem, North Carolina, and York, Pennsylvania. Id. Eckstein's job involved regular visits to both locations. Id.

On October 3, 2018, Eckstein was visiting the Winston-Salem plant and, while discussing an OSHA compliance issue with his co-worker, was approached by Tedder. Eckstein alleges Tedder said: "Typical safety people. Standing around doing nothing. Get out on the floor." Id. at 3. Eckstein allegedly tried to correct what he perceived as Tedder's erroneous perception of his work ethic. Id. He claims that, in response, Tedder forcefully smacked Eckstein's rear with an open hand, causing Eckstein "physical injury, to-wit, redness, swelling, soreness, and bruising." Id. Eckstein states he told Tedder "to never touch him again," to which Tedder responded, "[d]on't say something you're going to regret, boy." Id.

Eckstein says he was shocked and reported the incident to the Winston-Salem police. Id. Eckstein claims he learned Tedder had a history of similar assaults on other coworkers and that the behavior was tolerated by Sonoco. Id. at 4. Eckstein indicated he reported the incident to Max Dillon, his supervisor, and Karyn Parker, a Human Resources employee. Id. Sonoco

allegedly did not follow up after his initial complaint, did not discipline Tedder, and refused to provide Eckstein with reports or information about any investigation on his formal complaint. Id. Eckstein claims Dillon pressured him to continue working with Tedder in the future and that Sonoco did not offer him any alternative accommodations. Id.

After learning of the complaint, Tedder allegedly told Eckstein, "I hope you come back to work, Craig," which Eckstein perceived as a threatening statement. Eckstein claims Parker conceded that Tedder's communication was inappropriate. Id. at 5.

In January 2019, Eckstein conducted several routine visits to Sonoco facilities, during which he discovered "that untrained, unqualified employees were performing electrical work and entering live electrical cabinets," that managers were aware of this "long-standing practice," and that managers were lying about OSHA compliance in documents. Id.

Eckstein began to file formal reports about these discoveries, which, though initially encouraged, eventually became the source of conflict. Id. at 6. He claims management became angered by his decisions and that "false and retaliatory" reports were filed against him by Sonoco employees. Id. at 6. Eckstein claims these same employees collaborated with Tedder, who orchestrated a plan to get Eckstein fired. Id. at 6–7.

Eckstein was fired on May 2, 2019. Id. at 7. When informed about his termination, Eckstein provided a verbal rebuttal but was never provided a copy of the complaint against him, despite requesting a copy several times. Id. Sonoco claims Eckstein was terminated for being "difficult to deal with" and having "damaged [his] relationship [with Tedder]." Id. However, Eckstein claims he had consistently met the expectations of his employer and that this termination is retaliatory. Id.

## II.

As a preliminary matter, the court must decide which body of law governs Eckstein's tort claims. At the hearing on October 22, 2020, the court questioned the parties about the applicability of the VWCA to an injury that occurred in North Carolina during the course of Eckstein's employment. At the time of the hearing, neither party had disputed the statute's applicability. Eckstein filed a complaint with the Virginia Department of Labor under VOSHA to exhaust his administrative remedies and filed this action in Virginia. ECF No. 1-1 at 8. Sonoco has consistently argued the VWCA applies. Even Eckstein's opposition to Sonoco's motion to dismiss does not dispute the applicability of the VWCA to Eckstein's and Sonoco's employment relationship generally but argues it does not cover the conduct alleged. The court ordered the parties to file supplemental briefing to demonstrate that the VWCA applied to the conduct at issue.

In its supplemental brief, Sonoco argues that the VWCA still controls. For the VWCA to apply, the contract of employment must have been made in the Commonwealth, the employer's place of business must be in the Commonwealth, and the contract of employment cannot be for services rendered exclusively outside of the Commonwealth. ECF No. 23 at 2; see also Va. Code § 65.2-508. Sonoco contends—and Eckstein does not refute—that the contract was executed in Virginia, Sonoco maintains several locations of business in Virginia, and that Eckstein executed his work for Sonoco in part from his home in Virginia. Sonoco also argues that, even if the North Carolina Worker's Compensation Act ("NCWCA") applies, Eckstein's claims are still barred.

In response, Eckstein argues for the first time that the NCWCA is operative. ECF No. 24 at 5. Eckstein does not rebut Sonoco's application of Virginia Code § 65.2-508 in determining the extraterritorial reach of the VWCA. He instead argues that, under North Carolina law, its own Worker's Compensation Act should apply. Id.; see also N.C.G.S. § 97-2. Eckstein also argues that under either the VWCA or the NCWCA, his claims are not barred. ECF No. 24 at 6–8.

The court finds Eckstein's arguments inapposite and agrees with Sonoco that the VWCA governs the injuries in this case. A district court located in Virginia must apply Virginia's choice of law rules to decide this issue. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). "In considering whether [Eckstein's] tort action is barred, the first question is whether Virginia, as the forum state, would extend coverage of its own Workers' Compensation Act." Kelly v. Guyon Gen. Piping, Inc., 882 F.2d 108, 109 (4th Cir. 1989). Virginia traditionally applies lex loci delicti, or the law of the place of the wrong, to tort actions like this one. See, e.g., Jones v. R.S. Jones and Assoc., Inc., 431 S.E.2d 33, 34 (Va. 1993); Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993). However, "[j]urisdiction over workers' compensation claims in Virginia is governed by statute." Pro-Football Inc. v. Paul, 569 S.E.2d 66, 70 (Va. App. 2002). As Sonoco argued, the court must look to Virginia Code § 65.2–508(A) to determine whether the VWCA applies.

The court finds that the facts of this case satisfy the three-pronged requirements of Virginia Code § 65.2-508(A), "bearing in mind that the Workers' Compensation Act is remedial in nature and is to be construed in the light most favorable to the employee." Worsham v. Transpersonnel, Inc., 426 S.E.2d 497, 498 (Va. App. 1993). The VWCA applies

if (1) the contract of employment was made in Virginia and (2) the employer's place of business is in Virginia, though the law provides an exception for contracts expressly for services provided exclusively outside of the Commonwealth. Id. As Eckstein is a Virginia employee working from home, the contract was made in Virginia. "The place where the last act necessary to give validity to the contract occurs is the place where the contract was made." Pro-Football Inc., 569 S.E.2d at 71 (quoting United States Steel Corp., Gary Works v. Industrial Comm'n, 510 N.E.2d 452, 455 (Ill. Dec. 1987)). Eckstein was hired by Sonoco to work from home, periodically traveling to Sonoco worksites. Thus, the last act necessary to give effect to his contract was beginning work pursuant to his employment from his residence in the Commonwealth. Next, it is undisputed that Sonoco has multiple locations in the Commonwealth from which it conducts its business. Contra CLC Const., Inc. v. Lopez, 456 S.E.2d 155, 158 (Va. App. 1995) (finding an out of state corporation with no offices or facilities in Virginia and that did not pay licensing fees in Virginia did not have its "place of business" in the Commonwealth). Finally, the contract was not for services exclusively rendered outside the Commonwealth. Although Eckstein traveled out of state for his role, he was hired predominantly as a work from home employee. Accordingly, the court finds the VWCA governs the injuries alleged in this case.

### III.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the plaintiff's complaint, which must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); see also Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006). When considering a motion to dismiss, the court must accept the well-

pled facts in the complaint as true and make all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court, however, is "not so bound by the plaintiff's legal conclusions." Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). To survive a motion to dismiss, the complaint must contain "sufficient factual matter…to 'state a claim…that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663.

## IV.

Eckstein's complaint asserts claims for retaliation under VOSH, Count One; wrongful termination under common law, Count Two; intentional infliction of emotional distress, Count Three; negligent infliction of emotional distress, Count Four; and negligent hiring and retention, Count Five. The parties agree that Count Two is precluded under VOSH, as the Virginia does not allow employees to seek a common law remedy for wrongful discharge when a statutory remedy is available. Jenkins v. Heilig-Meyers Co., 57 Va. Cir. 448, 450 (Fredericksburg 1998) (dismissing wrongful discharge claim based on violation of VOSH, because VOSH creates the exclusive remedy). Sonoco also moves to dismiss Counts Three, Four, and Five on the grounds that they are either precluded by VWCA or are insufficiently pled. Eckstein claims that VWCA only precludes actions that involve "injury by accident," which he takes to exclude, per se, intentional actions such as Tedder's alleged physical assault. Further, Eckstein claims the facts pled make plausible his claims of intentional infliction of

7

emotional distress, negligent infliction of emotional distress, and negligent hiring and retention by Sonoco.

The court finds the scope of the VWCA covers the conduct alleged in Eckstein's complaint. The VWCA provides an employee certain rights and remedies if the employee has suffered "an injury by accident arising out of and in the course of the employment." Va. Code § 65.2-101. The rights and remedies granted to an employee under the VWCA, "shall exclude all other rights and remedies of such employee ... at common law or otherwise," including personal injury claims arising out of covered conduct. Va. Code § 65.2-307; see also, e.g., Miller v. Washington Workplace, Inc., 298 F. Supp. 2d 364, 371 (E.D. Va. 2004) The VWCA precludes an employee from bringing common law personal injury claims against a co-employee or employer for injuries sustained during the course of employment. Accordingly, an injury that is (1) the result of an accident, (2) that arises out of employment, (3) and occurs in the course of employment can only be remedied by the VWCA. Miller, 298 F. Supp. 2d at 371; see also Richmond Newspapers, Inc. v. Hazelwood, 249 Va. 369, 457, 372 S.E.2d 56, 58 (1995).

First, the court finds that Eckstein's injuries are the result of an "accident" as that term has been interpreted by the Virginia Supreme Court. Contrary to Eckstein's understanding, Virginia state courts consider some intentional actions, such as hitting a coworker out of anger, to be accidental injuries covered by the VWCA. The Virginia Supreme Court has held that "[a] physical assault may constitute an 'accident' within the meaning of the [VWCA] when it appears that it was the result of an actual risk arising out of the employment." Butler v.

8

Southern States Co-op, Inc., 270 Va. 459, 465, 620 S.E.2d 768, 772 (2005) (citing Reamer v. National Service Industries, 237 Va. 466, 470, 377 S.E.2d 627, 629 (1989)).

The injury at issue here satisfies the three elements making VWCA the exclusive remedy available to Eckstein. "For an injury to be considered "by accident," it must have occurred at a particular time and place, as opposed to cumulative injury from repetitive trauma." Miller, 298 F. Supp. 2d at 371. This includes "injuries caused by an intentional or willful assault upon an employee by a co-worker or third party." Id. at 371–72 (finding an injury arising out of a supervisor grabbing an employee and hurtling her out the door precluded by the VWCA); see also, e.g., Sutter v. First Union Nat. Bank of Virginia, Inc., 932 F. Supp. 753, 758 (E.D. Va. 1996) (finding barred by the VWCA claims regarding an incident of a supervisor grabbing and forcibly removing an employee from the workplace); Jones v. Kroger Ltd. P'ship I, 80 F. Supp. 3d 709, 718 (W.D. Va. 2015) (finding claims arising out of a coworker repeatedly bumping and yelling at plaintiff precluded by the VWCA). Accordingly, Tedder's alleged intentional assault of Eckstein is an accident for purposes of the VWCA.

Eckstein further claims that not only was he injured by the physical assault, but that he also suffered emotional harm from the coordinated effort to complain against his safety inspections of Sonoco facilities. ECF No. 13 at 9. He cites Williams v. Garraghty, 249 Va. 224, 238, 455 S.E.2d 209, 218 (1995), for the proposition that intentional actions taken to injure a coworker, such as a campaign of defamation, are not covered by the VWCA, because the intent is to emotionally injure. However, even Eckstein concedes in the complaint that employees of the York plant did not intend to cause emotional damage, but rather to communicate their displeasure with Eckstein exposing alleged safety violations, a VWCA-

covered employment activity. Although Eckstein claims that the workers collaborated with Tedder to get Eckstein fired, he provides no plausible facts to support such an allegation. Accordingly, there are insufficient facts pled for this court to identify an intentional injury to support a tort claim outside of the conduct covered by the VWCA.

Second, the court finds that the altercation between Eckstein and Tedder arose out of his employment. The second element, interrogating whether the injury arose out of the plaintiff's employment, focuses on the nexus between the work and the injury. Sutter, 932 F. Supp. at 758. This element "must be construed liberally in favor of coverage under the act." Miller, 298 F. Supp. 2d at 372 (citing Brown v. Reed, 209 Va. 562, 564, 165 S.E.2d 394, 396 (1969)). Virginia courts have "consistently held that when an assault 'is personal to the employee and not directed against [her] as an employee or because of [her] employment, the injury does not arise out of the employment.'" Butler, 270 Va. at 466 (citing Hazelwood, 249 Va. at 373, 457 S.E.2d at 58). Accordingly, Eckstein's tort claims arising out of his co-worker's alleged, intentional assault can only proceed if they are personal in nature. For injuries arising out of intentional actions, "[t]he necessary causal connection may be established if the evidence shows that the attack was directed against the claimant as an employee or because of the employment." Miller, 298 F. Supp. 2d at 372. Compare Hazelwood, 249 Va. at 373, 457 S.E.2d at 58 (finding VWCA did not cover injuries arising out of repeated sexual assaults personal in nature), and Hartman v. Retailers & Mfrs. Distribution Marking Serv., Inc., 929 F. Supp. 2d 581, 587 (W.D. Va. 2013) (same), with Miller, 298 F. Supp. 2d at 372 (finding injuries arose out of employment when a supervisor, who had allegedly sexually harassed plaintiff in

the past, grabbed and shoved plaintiff toward the door after she asked for the sexual harassment policy).

Here, "[n]othing in the complaint suggests that [defendant's] actions were motivated by his personal feelings or impulses toward [plaintiff]." Jones, 80 F. Supp. 3d at 719. As with Miller, "every event in this scenario ... is work-related." 298 F. Supp. 2d at 372. Eckstein overheard a disparaging comment related to his behavior at the workplace. He confronted the coworker about the comment to rectify what he thought was an incorrect perception of his work. Tedder's alleged assault was a reaction to Eckstein's communication about work-related issues, such as his purpose at the facility and his discussion of OSHA issues with a coworker. Even Tedder's allegedly threatening communication to Eckstein, saying he hoped to see Eckstein back at work, focused on employment related subject matter. There are no facts in the complaint from which the court could construe, however liberally read, a personal motivation for the assault.

Eckstein argues that this court should not dismiss his tort claims because his claims are analogous to those in Middlekauff v. Allstate Insurance Co., 247 Va. 150, 151, 439 S.E.2d 394, 395 (1994). In Middlekauff, the Supreme Court of Virginia allowed a plaintiff to proceed with her intentional infliction of emotional distress claims against her employer because the injury arose out of a campaign to inflict humiliation that was personal, focused on her weight and gender, and not tied to her employment. Id. at 154. Here, Eckstein did not suffer a targeted personal attack to his appearance or character, nor did the assault arise out of a personal dispute between himself and Tedder.

11

The complaint can be read to argue that Tedder had violent proclivities, presenting a personal risk divorced from his position with Sonoco or relationship with coworkers. ECF No. 1-1 at 12 ("Sonoco knew or should have known through the use of ordinary care of Mr. Tedder's discoverable propensities for physical violence…"). However, without addressing the claim of negligent hiring and retention on the merits, the court finds that Eckstein's allegations do not rise to the standard applied in Hartman v. Retailers & Mfrs. Distribution Marking Serv., Inc., in which the court found that "a personal attack that was 'in no way in furtherance of [the employers'] business…cannot fairly be traced to [the plaintiff's] employment as a contributing proximate cause.'" 929 F. Supp. 2d at 587. Hartman involves a plaintiff who was violently sexually assaulted by a coworker in a dimly lit parking lot. Eckstein, alternatively, was physically hit by a coworker on the floor of a Sonoco plant, during work hours, and as part of a work-related conversation. In Hartman, the court found that sexual violence was so removed from the conditions of employment that the injury could not be considered to arise out of the employment. Id. However inappropriate or unexpected, physical altercations occur with some regularity in the workplace. Virginia courts have found an accident arising out a third-party assault to arise out of the conditions of employment when the employer knew or should have known of the dangerous condition and failed to protect the employee. Plummer v. Landmark Comm., Inc., 235 Va. 78, 86–88, 366 S.E.2d 73, 76–77 (1988). If, as Eckstein contends, Tedder displayed a violent disposition and possessed a history of assaulting coworkers, then that would further demonstrate the injury arose out of a condition of employment of which Sonoco knew or should have known.

Finally, the court finds that the injuries occurred during the course of employment—the third element outlined out Miller. Tedder alleged assaulted Eckstein while Eckstein was visiting a Winston-Salem plant as part of his employment. Tedder was at the plant as part of his employment. The parties do not dispute that the injuries occurred during the course of employment and so the court need not address this element in further detail.

The court finds that Eckstein's tort claims are barred by the VWCA. Both the interaction between Eckstein and Tedder and the reaction to Eckstein's efforts to investigate OSHA violations at Sonoco facilities arise out of his conditions of employment. Accordingly, the court **GRANTS** Sonoco's motion and **DISMISSES with prejudice** Counts Two, Three, Four, and Five of the complaint.

It is so **ORDERED**.

Entered: December 4, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.12.04 17:12:59 -05'00'

Michael F. Urbanski
Chief United States District Judge